UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REBECCA B.,

                                        Plaintiff,

                    v.

LELAND DUDEK,[1] Acting Commissioner of
  Social Security,

                                        Defendant.
_____

|  |  |
|---|---|
| | **DECISION**<br>**and**<br>**ORDER** |
| | **22-CV-6254F**<br>(**consent**) |

APPEARANCES:        HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                    Attorneys for Plaintiff
                    IDA M. COMERFORD,
                    JUSTIN DAVID JONES, and
                    KENNETH R. HILLER, of Counsel
                    6000 North Bailey Avenue
                    Suite 1A
                    Amherst, New York  14226

                    MICHAEL DiGIACOMO
                    INTERIM UNITED STATES ATTORNEY
                    Attorney for Defendant
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York  14202
                            and
                    KATHRYN L. SMITH
                    Assistant United States Attorney, of Counsel
                    100 State Street
                    Rochester, New York  14614
                            and
                    JOHANNY SANTANA
                    Special Assistant United States Attorney, of Counsel
                    Social Security Administration
                    Office of General Counsel
                    6401 Security Boulevard
                    Baltimore, Maryland  21235

_____

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 16, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 1, 2024, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on October 31, 2022 (Dkt. 9), and by Defendant on December 29, 2022 (Dkt. 10).

## BACKGROUND

Plaintiff Rebecca B. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on January 24, 2020, for Supplemental Security Income under Title XVI of the Act ("disability benefits").  AR[2] at 15, 196-205.  Plaintiff alleges she became disabled on January 14, 2019, based on bipolar (diagnosed in 2007), depression (diagnosed 2007), anxiety (diagnosed 2007), a learning disability (diagnosed in grade school), high risk HPV (human papillomavirus) based on a cervical cancer diagnosis in August 2018, bladder dropping caused by hysterectomy, liver issues, kidney issues, anemia (diagnosed in 2007), and arthritis (diagnosed in 2017).  AR at 206, 244, 248.  Plaintiff's application initially was denied on June 3, 2020, AR at 60, and upon reconsideration on October 5, 2020.  AR at 84.

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on August 31, 2022 (Dkt. 7).

Plaintiff timely filed a request for an administrative hearing, AR at 126-42, and on April 12, 2021, the administrative hearing ("the hearing") was held in Rochester, New York, before Administrative Law Judge ("ALJ") John P. Costello ("the ALJ").  AR at 29-59.  Appearing and testifying at the first hearing were Plaintiff, represented by Frederick Peterson, Esq., and impartial vocational expert ("VE") Susan Gaudet.

On May 26, 2021, the ALJ issued a decision denying Plaintiff's claims, AR at 12-28 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 193-95.  On April 6, 2022, the Appeals Council denied Plaintiff's request to review the ALJ's decision, rendering it the Commissioner's final decision.  AR at 1-6.  On June 6, 2022, Plaintiff commenced the instant action seeking review of the ALJ's decision denying Plaintiff disability benefits.

On October 31, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On December 29, 2022, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Cross Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 10-1) ("Defendant's Memorandum").  Filed on January 19, 2023, was Plaintiff's Reply Brief to Defendant's Motion for Judgement [*sic*] on the Pleadings (Dkt. 11), advising Plaintiff was relying on her initial arguments because any further argument "would simply duplicate arguments made in the original brief."  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[3]

Plaintiff Rebecca B. ("Plaintiff"), born October 30, 1990, was 28 years old as of her alleged disability onset date ("DOD") of January 14, 2019, and 30 years old as of May 26, 2021, the date of the ALJ's decision.  AR at 24, 206, 244.  As of September 5, 2018, prior to the application date, Plaintiff had recently broken up with her boyfriend who is the father of at least one of her children, after which Plaintiff briefly lived with her three young daughters, with her parents in a small house, along with her sister, her sister's three children and a newborn child, and the sister's boyfriend.  AR at 554.  By October 15, 2018, Plaintiff reported she had since found stable housing.  AR at 555.  In school, Plaintiff was in special classes after kindergarten and finished 9th grade, but did not graduate, has not obtained a GED, nor has Plaintiff completed any type of specialized training, trade, or vocational school.  AR at 249.  Plaintiff has a driver's permit, but never obtained a driver's license and does not drive.  AR at 54.  Other than sporadic babysitting, Plaintiff's only past work experience was as a cleaner for three months in 2019, AR at 250, which Plaintiff quit because pain in her lower abdominal area and back prevented her from lifting a mop bucket.  AR at 52-53.  Plaintiff reports a history of mental and physical domestic abuse by her parents and boyfriends, as well as a history of suicide attempts, most recently in 2018.  AR at 42.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Plaintiff received gynecological and obstetrics care from Laura Doheny Callanan, D.O. ("Dr. Callanan") at Genesee Medical Services ("Genesee").  AR at 519.  Dr. Callanan referred Plaintiff to pelvic pain specialist Amy Benjamin, M.D. ("Dr. Benjamin"), and sexual health specialist Pebble Kranz, M.D. ("Dr. Kranz"), but Plaintiff never followed through with the referrals.  AR at 1029.

Plaintiff has a long history of mental health impairments which are at least partially attributed to a history of domestic, including sexual and physical, abuse including by her parents and boyfriends.  AR at 654.  Plaintiff reports that beginning at age 12, she was "sold" by her parents for drugs and raped, became pregnant at age 13 and forced to have an abortion by her parents.  *Id*.  At unidentified times, Plaintiff witnessed a drive-by shooting and had a gun pointed at her.  *Id*.  For years, Plaintiff received mental health treatment through Rochester Regional Health ("RRH"), at the Genesee Mental Health Adult Clinic ("GMHC"), where she saw various treatment providers, particularly Licensed Mental Health Counselor ("LMHC") Shanelle Slade ("LMHC Slade"), from July 2015 until July 30, 2019 when LMHC Slade left GMHC and transferred Plaintiff's treatment to Regina Howland ("Howland").[4]  AR at 38-39, 295-513, 514-645, 651, 661-63, 805.  LMHC Slade repeatedly diagnosed Plaintiff with bipolar 2 disorder, anxiety, borderline personality disorder in adult, psychophysiological insomnia, and cluster B personality disorder,[5] but mental status examinations were consistently unremarkable except for fair, as opposed to good, insight and judgment, and an

---

[4] No mental health treatment credentials for Howland are in the record.
[5] "Cluster B personality disorders" "involve unpredictable, dramatic, or intensely emotional responses to things. The four main cluster B disorders are: antisocial, borderline, histrionic, [and] narcissistic."  *See* What Are Cluster B Personality Disorders*, available at* https://www.webmd.com/mental-health/what-are-cluster-b-personality-disorders*, last visited* March 4, 2025.

elevated risk of suicide.  *See*, *e.g.*, AR at 296 -97(February 1, 2018), AR at 316-17 (September 7, 2017), AR at 447-48 (May 16, 2016).  In November 2019, Plaintiff was discharged from treatment at GMHC because after repeated failures to attend appointments as scheduled because she refused to see a male counselor, *i.e.*, LMHC Daniel J. Prince ("LMHC Prince").  AR at 524-29, 651.[6]  On January 30, 2020, Plaintiff presented to RRH seeking to re-start treatment for bipolar, anxiety, and depression where she saw Mental Health Counselor ("MHC") Meghan Stevenson ("MHC Stevenson").  AR at 649-55.  Plaintiff reported that despite her history of domestic violent relationships, and acting aggressively and violently toward others in the community, she "outgrew that."  *Id*. at 653.  Despite her violent and mentally abusive past, at that time no signs or symptoms related to trauma or abuse were detected and Plaintiff had recently decided to leave a conflicted relationship with the father of her youngest daughter.  *Id*. at 654.  A plan was to be prepared for Plaintiff to resume mental health treatment through RRH, but before the plan was put into place, the COVID-19 pandemic occurred and no new appointments for counseling were accepted.  AR at 38.

Plaintiff did not attend any of the three consultative examinations that were scheduled by SSA in connection with her disability benefits application, including for August 27, September 8, and September 21, 2020, and also failed to respond to a letter from SSA dated September 24, 2020 seeking an explanation for Plaintiff's failure to appear for the examinations.  AR at 77, 78.  Accordingly, the only medical opinions of record are those completed on October 5, 2020 by State Agency review psychologist E. Kamin, Ph.D. ("Dr. Kamin"), and State Agency review physician J. Randall, M.D. ("Dr.

---

[6] The record does not indicate why Plaintiff did not receive treatment from Howland at GMHC, to whom her case reportedly was transferred.

Randall"). AR at 77-83. Based on a review of Plaintiff's medical records, Dr. Kamin considered whether Plaintiff was disabled based on depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorder, but found that Plaintiff's medical records did not support disability based on any mental impairment. AR at 77-78. Dr. Randall found the administrative records established Plaintiff had severe dysfunction of her major joints, resulting in pain and limiting Plaintiff to light work. AR at 77, 79-91.

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The burden of proof is on the applicant for the first four steps, with the Commissioner

bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and

416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need

not be addressed because if the claimant fails to meet the criteria at either of the first

two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if

the claimant meets the criteria for the third or fourth step, the inquiry ceases with the

claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.


### 3.    Analysis of Plaintiff's Arguments

In the instant case, in the ALJ's decision, the ALJ found that Plaintiff has not

engaged in substantial gainful activity ("SGA") since January 21, 2020, the application

date.  AR at 17.  The ALJ found Plaintiff suffers from the severe impairments of obesity,

bipolar II disorder, anxiety disorder, cluster B personality disorder, and borderline

personality disorder.  AR at 17.  Plaintiff also suffers from anemia, UTI (urinary tract

infection), hysterectomy, chronic pelvic pain, and abnormal Pap smear, but such

impairments do not cause more than a minimal limitation of Plaintiff's ability to perform

basic work activities and are therefore non-severe.  *Id*. at 17-18.  The ALJ also found

that there is no CT scan of Plaintiff's abdomen in the record, nor any MRI of Plaintiff's

cervical or lumbar spines to confirm a back impairment in light of Plaintiff's complaints of

back pain.  AR at 18.  The administrative record also does not include any nerve

conduction study or other neurological test to establish any severe musculoskeletal

impairment.  *Id*.  The ALJ further found that Plaintiff does not have an impairment or

combination of impairments meeting or medically equal to the severity of any listed

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 18-19. Despite her

impairments, the ALJ found Plaintiff retains the RFC to perform a full light work as

defined in 20 C.F.R. § 416.967(b), with several nonexertional limitations including that

Plaintiff is limited to low stress work defined as simple, routine tasks with occasional

decision making and occasional contact with supervisors, coworkers, and the public.

AR at 19-22. Although Plaintiff has no past relevant work, the ALJ found that Plaintiff,

based on her age, limited education, work experience, and RFC, could perform work

existing in significant numbers in the national economy including as a package sorter,

mailroom clerk, and laundry sorter. *Id*. at 22-23. Accordingly, the ALJ found Plaintiff

was not disabled as defined in the Act since January 21, 2020, when Plaintiff filed her

application. *Id*. at 24.

     In support of her motion, Plaintiff argues that remand is warranted because the

ALJ's decision is not supported by substantial evidence in the record insofar as the ALJ

made a stress finding without making a specific assessment of Plaintiff's stress,

Plaintiff's Memorandum at 11-15, in formulation the RFC the ALJ "improperly cherry-

picked and mischaracterized evidence," *id*. at 15-18, and the ALJ failed to account for

Plaintiff's right ovarian cyst at step two of the sequential analysis. *Id*. at 18-24. In

opposition, Defendant argues that contrary to Plaintiff's arguments, the ALJ considered

the totality of the evidence in assessing Plaintiff's mental RFC which is supported by

substantial evidence in the record, Defendant's Memorandum at 11-17, the ALJ did not

"cherry-pick" or mischaracterize evidence in the record but, instead, summarized the

longitudinal evidence including prior to the period relevant to Plaintiff's claim, *id*. at 17-

20, and the ALJ sufficiently considered Plaintiff's chronic pelvic and abdominal pain at step 2 of the sequential analysis.  *Id*. at 20-22.

### A.    Physical Impairment

The court first addresses Plaintiff's arguments concerning the ALJ's failure at step 2 of the sequential analysis to consider her right ovarian cyst as a severe impairment despite evidence in the record showing it significantly limited Plaintiff's ability to perform basic work activities.  Plaintiff's Memorandum at 18-24.  In opposition, Defendant argues that although the record shows Plaintiff had a right ovarian cyst in April 2020, by October 2020, the right ovarian cyst had resolved and Plaintiff then had a left ovarian cyst, such that Plaintiff cannot establish her right ovarian cyst was a condition lasting or expected to last 12 months as required by 20 C.F.R. § 416.909. Defendant's Memorandum at 21.  Nevertheless, the ALJ considered Plaintiff's chronic pain in limiting Plaintiff to light work.  *Id*. at 21-22.  As Defendant argues, the record fails to establish that Plaintiff's right ovarian cyst continued for at least 12 months as required for disability under the Act.  20 C.F.R. § 416.909.

Initially, the court observes that when applying for disability benefits, Plaintiff did not include ovarian cysts among her numerous impairments.  *See* AR at 206 (asserting disability based on bipolar, depression, anxiety, a learning disability, high risk HPV based on a cervical cancer diagnosis, bladder dropping caused by hysterectomy, liver issues, kidney issues, anemia, and arthritis).  Rather, Plaintiff was first diagnosed with a right ovarian cyst based on a sonogram performed on April 15, 2020, when Plaintiff presented to the emergency department of Rochester General Hospital ("RGH") with

complaints of severe abdominal pain in the right lower quadrant of her abdomen.  AR at

990.  An ultrasound confirmed the presence of a right hemorrhagic ovarian cyst.  AR at

994.  It was recommended that Plaintiff take ibuprofen for pain and follow-up with her

gynecologist and was discharged from the emergency department.  AR at 994.  Another

ultrasound on August 12, 2020 showed a right hemorrhagic ovarian cyst.  AR at 999.  At

a follow-up examination with Dr. Callanan on September 9, 2020, Plaintiff reported

taking ibuprofen for her pelvic pain, and it was noted that despite multiple referrals,

Plaintiff had yet to contact a pain management specialist.  *Id*. at 1029.  At that time, an

ultrasound showed Plaintiff with a "stable" right ovarian cyst.  AR at 1029.  Dr. Callanan

discussed with Plaintiff the "likelihood of multifactorial nature of her pain and extensive

history," and Dr. Callanan again referred Plaintiff to pelvic pain management specialist

Dr. Benjamin.  *Id*. at 1029-30.  On October 29, 2020, Plaintiff again presented to the

emergency department at RRH with complaints of abdominal pain.  AR at 1140-41.

Transabdominal Doppler imaging showed a left hemorrhagic ovarian cyst, but no right

ovarian cyst.  AR at 1141.  Accordingly, the record shows Plaintiff's right ovarian cyst

was not a severe impairment for at least 12 months such that the ALJ did not err in

failing to consider it a severe impairment at step 2 of the sequential analysis.  *See*

*Montalvo v. Comm'r of Soc. Sec.*, 2020 WL 13558653, at *9 (W.D.N.Y. Aug. 27, 2020)

("'Of course, a remediable impairment is not disabling.'" (quoting *Mongeur v. Heckler*,

722 F.2d 1033, 1039 (2d Cir. 1983))).

Nevertheless, the ALJ did consider Plaintiff's complaints of chronic pelvic and

abdominal pain, but that Plaintiff's physical examinations were largely unremarkable, no

objective tests in the file confirm any severe physical impairment, with Plaintiff's physical

examinations showing full range of motion, no motor weakness, normal coordination and gait.  AR at 21.  The ALJ further observed that despite repeated referrals, Plaintiff never followed through with any specialists including, *inter alia*, Dr. Benjamin, the pain management specialist.  *Id*.  *See* AR at 1037, 1117.  Instead, Plaintiff "had mostly routine, conservative treatment for her alleged physical abdominal and back pain."  *Id*.  Moreover, when Plaintiff visited RGH's emergency department on April 23, 2021, for a facial infection and headache, Plaintiff denied any abdominal or back or neck pain, she was not in acute distress, and no abdominal tenderness was detected upon examination.  AR at 1081-84.  In his findings, however, the ALJ accommodated Plaintiff's pain complaints by limiting her to light work.  *Id*. at 21.  This limitation is supported by Dr. Randall's assessment that Plaintiff's only physical impairment is dysfunction of major joints.  *See Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a] well-supported opinion from a . . . a non-examining state agency doctor . . . may . . . provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r* of Soc. Sec., 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021).

### B.    Mental Health Impairment

Plaintiff' argues the ALJ erred by making a specific finding regarding the effects of Plaintiff's stress on her ability to perform basic work activities without conducting a proper stress analysis, Plaintiff's Memorandum at 11-14, that limiting a plaintiff to simple work is not sufficient to accommodate stress limitations, *id*. at 14-15, and the ALJ

"cherry-picked" evidence in formulating the RFC that Plaintiff is not disabled. *Id*. at 15-18. In opposition, Defendant argues the ALJ was not required to explicitly reference a stress limitation, but properly determined an appropriate stress limitation based on treatment notes and Plaintiff's testimony which were inconsistent with Plaintiff's responses to an Adult Function Report form completed in connection with the disability benefits application. Defendant's Memorandum at 11-15 (referencing AR at 247-57). Defendant also references caselaw supporting that an ALJ can properly accommodate a stress limitation by limiting the plaintiff to simple work, AR at 15-16, and that in any event, it is the ALJ's prerogative to resolve conflicting evidence. *Id*. at 16-17.

With regard to Plaintiff's argument that the ALJ was required to specifically analyze the effect of Plaintiff's stress on her ability to perform basic work activities, the ALJ considered the so-called "paragraph B criteria" for disability based on mental impairments for Listings 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders), for which the same mental functioning criteria are located in paragraph B of each listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04B and 12.06B. The paragraph B criteria pertain to four areas or "domains" of adaptive functioning including (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Subpt. P, App. 1 §§ 12.00E, 12.00F ("§ 12.00__"). To satisfy the paragraph B criteria, the claimant's mental disorder must result in an "extreme" limitation of one, or a "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. Subpt. P, App. 1, § 12.05A2b.

In the first functional area of understanding, remembering, or applying information, the ALJ considered Plaintiff's history of a learning disability in school, Plaintiff only reached 9th grade and did not graduate, but nevertheless is able to raise her three children, provide them with food, clothing, and shelter, and assist with their homework.  AR at 18.  Accordingly, the ALJ assessed Plaintiff as moderately limited in this functional domain.  *Id*.

In the second functional domain of interacting with others, the ALJ also assessed Plaintiff with a moderate limitation based on Plaintiff's allegations that she isolates and does not want to talk to people, but Plaintiff also travels independently, lives with multiple relatives and friends, and does not report any "friction" with her current living situation.  AR at 18.  Because of Plaintiff's elevated level of anxiety, however, the ALJ determined Plaintiff is limited to occasional contact with the public, supervisors, and coworkers.  *Id*.

For the third functional domain of concentrating, persisting, or maintaining pace, the ALJ assessed Plaintiff with a mild limitation based on Plaintiff's alleged difficulties concentrating despite evidence in the record, including repeated mental status examinations, showing Plaintiff's concentration and memory were intact.  AR at 19.  The ALJ commented that Plaintiff was sometimes noted as being distracted by her daughter's health, a seizure disorder, but that Plaintiff's mental status examinations were otherwise normal.  *Id*.  Nevertheless, to accommodate Plaintiff's history of being learning disabled, the ALJ limited Plaintiff to "low stress work defined as simple, routine tasks with occasional decision-making . . . ."  *Id*.

16

For the fourth functional domain of adapting or managing herself, the ALJ assessed Plaintiff as mildly limited based on her limited education and non-compliance with medications.  AR at 19.  Despite these factors, the ALJ observed that Plaintiff is physically capable of attending her appointments, shops in stores for food and other items, and is able to manage daily tasks even when overwhelmed with psychosocial stressors.  *Id*.

The ALJ's assessment of Plaintiff with regard to the paragraph B criteria is further supported by other evidence in the record including evidence that Plaintiff was encouraged to pursue employment.  *See*, *e.g.*, AR at 569 (LMHC Slade reporting on March 19, 2019, that she "spent time processing paperwork and identifying barriers to employment," and that LMHC Slade "made recommendations for 15 hours of work related activities-client [Plaintiff] was receptive," Plaintiff was "open to other possibilities," and Plaintiff demonstrated "the desire to see if she can be successful with working. . . .").  Significantly, at the administrative hearing, Plaintiff testified she left her last job in 2019 because of back pain.  AR at 52-53.  Other evidence the ALJ references in support of the determination that Plaintiff's mental impairments were accommodated by limiting Plaintiff to low stress work defined as simple, routine tasks with occasional decision making and occasional contact with supervisors, coworkers, and the public, include that subsequent to being discharged from treatment in November 2019 for non-compliance since July 2019, Plaintiff did not receive any mental health treatment until January 2020, at which time it was reported Plaintiff had not taken any  psychotropic medications since February 2017, however on mental status examination, Plaintiff's memory was intact, she was neatly dressed, was cooperative, and her mood was

anxious yet Plaintiff's affect was full range and insight and judgment were fair. AR at 21 (referencing AR at 651).

Insofar as Plaintiff argues the ALJ "cherry-picked" the administrative record for evidence supporting the determination that Plaintiff is not disabled, a thorough review of the record supports the ALJ's determination that mental status examinations of Plaintiff regularly and repeatedly were largely within normal limits. *See* AR at 20-21 (referencing examinations on November 13, 2017, February 1, 2018, January 17, 2019, February 5, 2019, June 18, 2019, August 2, 209, January 30, 2020, June 30, 2020, and October 29, 2020). Additionally, despite Plaintiff's history of suicide attempts, Plaintiff testified at the administrative hearing that her last attempt was in 2018, *i.e.*, prior to Plaintiff's alleged disability onset date of January 14, 2019. AR at 42.

Further, although Plaintiff references caselaw in which this court held that limiting a claimant to simple work is not sufficient to accommodate stress limitations, Plaintiff's Memorandum at 14-15, Defendant references caselaw holding otherwise. Defendant's Memorandum at 15-16. All the cases on which Plaintiff relies, however, are distinguishable from the instant case. In particular, in *Sean C. v. Comm'r of Soc. Sec.*, 2021 WL 2400011, at * 5 (W.D.N.Y. June 11, 2021), the ALJ failed to account for evidence in the record that the claimant could not function when he became stressed, but needed to remove himself from the situation and be alone. In *McCann v. Comm'r of Soc. Sec.*, 2020 WL 270134, at * 4 (W.D.N.Y. Jan. 13, 2020), the ALJ made an RFC assessment that limited the claimant to simple, unskilled work despite evidence in the record that the claimant could not function when stressed). In *Corbeil v. Saul*, 2019 WL 2590606, at *6 (W.D.N.Y. June 25, 2019), the ALJ, in assessing the claimant with a

moderate limitation in dealing with stress, relied on medical opinions that were rendered years earlier and thus without the claimant's complete medical history. In short, in none of the cases on which Plaintiff relies did the ALJ not only limit the claimant to simple work, but also to routine tasks with only occasional decision making and occasional contact with supervisors, coworkers, and the public as did ALJ Costello in the instant case.

In contrast, the cases on which Defendant relies are factually more similar to the instant case. Specifically, in *Herb v. Comm'r of Soc. Sec.*, 366 F.Supp.3d 441, 447 (W.D.N.Y. 2019), the court observed that "even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations. For example, an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." (citing cases). In *Figgins v. Berryhill*, 2017 WL 1184341, at ** 10-11 (W.D.N.Y. Mar. 29, 2019), the court held that although the ALJ did not specifically mention stress, the ALJ "implicitly incorporated the effects that stress would have on plaintiff in his RFC and the questions he asked the VE." (citing cases). In *Scanlon v. Colvin*, 2016 WL 4944332, at * 8 (W.D.N.Y. Sept. 16, 2016), the court concluded that in the ALJ's written opinion, the ALJ sufficiently assessed the claimant's stress-related limitations in formulating the claimant's RFC, including medical opinions, by addressing the claimant's difficulty dealing with others by limiting the claimant to simple work with only occasional contact with people, encouragement to participate in simple job training, and finding at most moderate limitations in the four domains of mental functioning. Similarly, as discussed above, *see* Discussion, *supra*, at 15-18, in

the instant case, a plain reading of the ALJ's decision establishes the ALJ implicitly incorporated Plaintiff's stress-related limitations into the RFC formulation.

   The evidence in the record thus establishes at most that it is susceptible to more than one rational interpretation, including that Plaintiff did not have a disabling impairment, or combination of impairments, as defined under the Act.  *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Further, the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citation and quotation marks omitted).  Indeed, as noted, *see* Discussion, *supra*, at 8, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  In the instant case, the ALJ's decision that Plaintiff was not disabled between the date of her disability benefits application and the date of the ALJ's decision is supported by substantial evidence in the record.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion

(Dkt. 10) is GRANTED.  The Clerk of Court is DIRECTED to close the file.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        March 4, 2025
             Buffalo, New York